We'll now take up the Pencoff cases. First case, number 5-15-0288, Pencofsky v. Clark. The court will note that Justice Cates is also a participating member of the panel. She is not able to be here today. She will have the benefit of an oral argument and brief. The arguments are recorded and she is a fully participating member of the panel. Counsel to the appellant, you may proceed. May it please the court, counsel. I'm Paige Strachan. I'm here today to represent Craig Clark, who is the appellant in this matter. This is an appeal from the entry of a plenary no-contact stalking order. It was entered in 2015. Before I get too involved in either of the two issues that I've raised, I want to point out something about the appellee's brief. An appellee is not required to file a statement of facts, but in this case, the appellee has chosen to do so. I take no issue with that, of course. I welcome it. However, the entire first page of his statement of facts contains no citation to the record. It is not in compliance with the Supreme Court rule. The reason that there is no citation to the record is because none of the facts in his first page of his statement of facts appear in the record. They appear nowhere in the record. So I'd ask that you would strike that. Strike his first page. Have you filed a written motion? I did not. And the reason I chose not to do that is because... Can you leave and file a written motion? I can. Absolutely. I would like to leave and file a written motion as to that. Spoke with Grant to leave and file a written motion within 10 days. Thank you, Your Honor. And, of course, the appellee will have an opportunity to respond within the same 10 days. Thank you, Your Honor. That being said, I do want the Court to be aware, going into this argument, that the presentation at the beginning of his statement of facts is kind of indicative of this entire case. Before you proceed any further, why has this case not moved? Hasn't the order already expired? They continue to extend it until it is decided on appeal. So there have been orders extending the plenary. Is that in the record? That has happened since the record was filed. So it would have... When my appeal was filed, the order was still in effect. I understood at the time that it was quite likely we would not finish this appeal before the order expired. However, since then, it has been extended by the trial court. That is not a part of the record. So I couldn't supplement that to my petition because it has happened subsequent to the notice of appeal being filed. But that is my understanding. I believe that it is in effect at this time. If I am wrong about that, I certainly would like to be corrected. But I do know that it has been extended at least one time since the expiration in July. Do you know the expiration date? I believe it was July 15, 2017, something like that. Oh, hasn't that already expired? It was extended from that July date until a further date, I think maybe even until October or so. I don't know because I wasn't privy to the trial court proceedings after that. I'm certain that the appellee can address that as he is the actual party involved. I have raised two issues in this appeal. The first one is that the petition was not proved by preponderance of the evidence, and therefore the order should not have been entered. But I would like to focus first on the second issue that I raised, and that is on the trial court's errors that occurred during the hearing on the plenary. The first error that the trial court made was that a plethora, just so much evidence, was presented and allowed to be presented regarding allegations that were not a part of the petition. There are, I think, seven, eight, nine allegations in the actual petition for the no-contact order. Those are evidence that was used by the trial court? Yes. What standard did you use? On the issues that were actually objected to, the abuse of discretion would apply. There are errors that I raised that were not objected to or not handled in the trial court, and I have argued in my brief that those are plain error. Plain error not only because the evidence is closely balanced, which we'll get into, but also because— Isn't this a civil case? Pardon me? Yes, it is. Well, it is a civil case, yes. So perhaps abuse of discretion manifests the way that the evidence is our standard on our first issue. The second one, because only one of the errors that I raised was actually objected to, most of them are plain error. There are—are there any other questions before I go further? Sorry. Maybe we should speak more. Okay, thank you. Alleged in the petition are as follows. The first allegation is that on no specific date, my client appeared at the office of Mr. Lukofsky without an appointment. I don't know when that happened, and I would find that not objectionable behavior as Mr. Lukofsky was his attorney, so he did have business there. But no evidence was presented about that at the hearing, so I'm presuming that, no, that was not found to be an act of stalking. The next allegation is that also on no specific date, my client drove by Mr. Lukofsky's home, and I'm assuming Mr. Lukofsky recognized Mr. Clark's vehicle. That was also not on a specific date. No allegations about that. I don't believe there's any testimony about that. The third allegation is on August 4th, my client and his friend appeared at Mr. Lukofsky's office, demanded to see him, was loud, and cursed him. Shortly after this, he was charged with stalking based on that act, and ultimately entered a plea to attempt stalking based on that act. While I would like to argue that that is not necessarily an act that could constitute, of course, be an act in the course of conduct that is required, because he has admitted in another trial court that he did commit those particular acts, whether they amounted to stalking or not, legally, is a separate issue, but he has acknowledged those. So I'm going to grant him that. There's one act that has been established. What were the facts in the plea? In the pleading? In the plea. Oh, in the plea. Then he was actually charged with stalking. He pled to attempt for making this one contact, and then he went to Mr. Lukofsky's office. He was angry. He was angry about the way his case had been handled. He demanded to see him. He raised his voice, and he called him a name. Mr. Lukofsky told him to leave, and he did. And that's what he acknowledged. That's what he admitted when he entered the guilty plea to an attempt stalking. So it was a reduced charge. But that was the underlying factual basis. And he admitted at trial that he did those things, or at the hearing on this matter, that he did do those things. Is it your argument that that act wouldn't constitute one of the alleged stalking acts? Well, if I'd been involved from the very beginning, it absolutely would have been my argument. But I wasn't, and I'm stuck with what the records say. So we have conceded that point in our brief. So the next allegation is that there was an incident at Walmart where Mr. Lukofsky was present, checking out, shopping. My client was also shopping. The allegation in the petition is not consistent with what Mr. Lukofsky's testimony was at trial. But the essential guts of it are, and my client admitted, that he did approach Mr. Lukofsky while he was checking out and placed a box of Kleenex on his checkout roll and made some comment about how he would need that for his sniveling. Mr. Lukofsky did not purchase those. There was no further conversation. Mr. Clark went on with his business. Oddly, at the same time, Mr. Lukofsky's secretary, who is not a named party in this case, was also at Walmart. And when she went out to her car, she found a bag tied to her door handle with Kleenex in it, with a note on it that said, For Walt. We would argue, first of all, that the allegation in the petition versus what Mr. Lukofsky testified to regarding whether he was approached by, whether he was spoken to, those things are all inconsistent. But also, we would allege that that doesn't amount to an act of stalking. An act of sarcasm, inappropriate, probably. But an act of stalking? Was there a tying of a Kleenex box along the car of the secretary? Of the secretary, but that is not the same. Did he admit that he did that? He did. He did. But it was no contact with him. It wasn't a threat. Does a stalking statute allow for contact with a third party? It certainly can. Is it considered an act of stalking? It can include a third party, absolutely. And our argument is that purchasing a gift of Kleenex for someone, even if you did it because you're a smart aleck, is not an act of intimidation. It's not an act of harassment. It is not something that would put a reasonable person, cause them emotional distress or put them in fear for their safety. It's a box of Kleenex purchased in a public place. The entire action happened in a public place. There was nothing about that that had any sort of evil intention behind it at all. Perhaps ill-advised. That doesn't constitute an act of stalking. There was more to that incident. There were four witnesses in this hearing. My client, his friend, Mr. Lukofsky, and his secretary. There were different stories about how the rest of that evening played out, about who was searching for who, who was directed somewhere. Who knows? But at some point, Mr. Lukofsky's secretary went to Mr. Clark's house, and she was at his home. That wasn't something that Mr. Clark sought out. That wasn't something he participated in. None of that was at his instigation by any stretch. He was at his own home. He asked her to leave. She did. Then the next allegation is that several times, and I put that in quotes in my brief because that's how it's alleged in the petition, several times after August 15th, Mr. Clark followed Mr. Lukofsky around town. But Mr. Lukofsky not only failed to allege any dates on which that happened, he testified at the hearing that he didn't know when that was. We would submit that if a person was subject to some sort of stalking behavior that was sufficient enough to cause him emotional distress or to cause him to fear for his safety, he would certainly recall the dates. However, Mr. Lukofsky said that he did not recall the dates. I would also submit that if he can't put those dates in a petition to put my client on notice of how to defend that, that that is an insufficient allegation anyway. The next allegation is similar. Mr. Clark stared into Lukofsky's office windows when he walked by. There's not any testimony to speak of about where in town his office is. Is it on the main square? Is it next to the only gas station? Is it all made of glass? I don't know any of that. None of that's in the order or either in the petition. There's no evidence of it in the hearing. We don't know when it happened. There's no suggestion that he was shooting fire out of his eyes when he looked in his windows. I don't know how that can be an act of stalking it beyond the bare allegation that he looked in a window at some time that we don't know when that is. The next allegation does, in fact, actually have a date, December 6th. Mr. Lukofsky says that he saw Mr. Clark walking on the other side of the road. My impression, and I can't tell you now if that's because it's clear in the record, if it was just my impression, that this was also in the downtown area near businesses and perhaps Mr. Lukofsky's office. I'm not sure about that. But that he was on the other side of the road. Did you participate in the trial? No. No. I would have liked to have, but no, I was not involved until the appeal. Mr. Lukofsky testified on this matter that Mr. Clark yelled something at him, but he couldn't distinguish what it was. If he couldn't distinguish what it was, how can he possibly determine that it was threatening, harassing? It could have been good morning. Perhaps, but he didn't testify to that. He didn't. He didn't testify that it was hostile. He didn't. There's no way to infer just because you have a rocky relationship with a person that everything that comes out of their mouth. Is there any evidence in the record that Mr. Clark admitted to that? No. No, absolutely not. He then continued in that same allegation to say that when Mr. Lukofsky got back to his office, his phone rang, and he knew it was Mr. Clark, and so he hung up on him. There's no testimony as to how he knew it was Mr. Clark. Nothing about what he said. Again, we don't have enough evidence in the record to support that as a finding. Was there an objection to foundation? There were several, and also I raised that issue too, that there were foundational problems with several things that were overruled by trial court. The next allegation was about Facebook photos.  Mr. Clark's personal page that is limited to just his friends. It's not a public page. It's not open to the world. There was a picture of his home, and I believe some comment about, can you believe a lawyer lives like this, something like that. But Mr. Lukofsky testified that he doesn't have a Facebook account. Wouldn't have seen it that way. He claims that his secretary showed it to him. There's some dispute between his testimony and the secretary's testimony about whether the secretary was directed to go find these things, look at these things, bring these things to me, or whether she just happened on it and voluntarily gave it. All the same, it is a public message. It's something that's out in the world. He's not in his living room. He's not in the garage taking pictures that he wouldn't have access to out in the world. And even more importantly, Lukofsky even admitted that he doesn't know who took the picture. He doesn't know if Mr. Clark took that picture. He just knows it's on his Facebook page. That doesn't mean anything. And there's absolutely no threat attached to any of this. He did post another comment about how Lukofsky had sent client goons to relay messages to him, and I believe that may have actually been posted as a dear Mr. Lukofsky. But knowing how Facebook works, and Mr. Clark is fully aware of and explained that, that was not actually directed at him. It was a manner of speaking because he's not his friend on Facebook, so there was no realistic expectation that could go to him. And it was actually asking Mr. Lukofsky to quit sending people to intimidate Mr. Clark. So those are the allegations in the petition. Not all of them had evidence presented at trial or at the hearing. Interestingly, there is a lot of evidence about incidents that happened in September of 2014. And keep in mind, these things span about five or six months. In September, where there was some incident at a bar called the Iron Keg, which I gather is a bar and grill in that area, where they both were present, there is a lot of dispute about what may have happened outside of it. The important part about the Iron Keg incident is that it was never alleged. It was not alleged in the petition. There was no way for anyone to be on notice that that was going to be discussed. And no contact order is absolutely limited to the allegations that are put in the petition, and this was not one of them. So all of the evidence about that should have been excluded, and the trial court allowed it over objection. I still don't understand why, but they did. And that is evidence that they never should have had presented to them in the first place. So when you add up the testimony that Mr. Lukofsky and his secretary presented, not only is it inconsistent with what he alleged in his petition, but it simply does not rise to the level of establishing any one of those allegations are sufficient to be the second act required to establish a course of conduct. It simply doesn't. The Walmart incident, which I think probably interests you the most, because it is a little strange and you've asked questions about it, Mr. Lukofsky was asked directly at the hearing, did you make a police report? And he said, no, I didn't think it rose to that level. Now he mentioned it to his officer friend, but he didn't make a police report. If he wasn't emotionally disturbed or in fear for his safety enough to make a police report, why is that sufficient to establish a second act of stalking? It shouldn't be. It simply isn't. Those are contradictory things that go to his credibility. I think if you look at how this entire case played out, I've been a public defender for 20 years. If somebody doesn't scream at me every day, I think that I have forgotten to go to work. It is not acceptable, but it's kind of the nature of the beast. It's part and parcel of dealing with multiple personalities in different situations. What we have here is one incident where there's no doubt that Mr. Clark was socially inappropriate and he should not have behaved the way he did in Mr. Lukofsky's office. I'm not going to argue that was okay. It wasn't. He shouldn't have done that. But it's one incident. These other things only came out, this petition filed by Mr. Lukofsky was only filed after Mr. Clark filed a petition against him. And according to Mr. Lukofsky, this had been going on since August. His petition wasn't filed until December. Why not? Because Mr. Clark filed one against him first. This was him going on the offense. He had had it. He had had it with this annoying client. Even though he wasn't his client anymore, he had to see him places he didn't like it. And he wanted it stopped. Certainly understandable. I get it. I understand that he didn't want to hear it anymore. He didn't want to look at him. He didn't want to wonder about it. But that is not the same as coming to a hearing and providing sufficient evidence that shows he has committed two or more acts of stalking so as to establish a course of conduct. Simply didn't do it. The evidence is not sufficient here. He did not establish that beyond a preponderance of the evidence. And the trial court simply should not have entered the order. And we would ask that you would vacate that initial order and, of course, anything that has been based on that since then. I could see about supplementing the record with the additional things if you would like that as well, Your Honor. If that interests you, I would ask. Absolutely, I'm asking for that. If the court thinks that would be helpful. We need to file a motion to supplement the record within 10 days  Thank you, Your Honor. As to the second issue, there was one other piece of evidence that was objected to that never should have been presented. And this kind of ties in a little bit with the statement of facts. Mr. Lukofsky tried to testify that the reason he was appointed to represent Mr. Clark was because Mr. Clark couldn't get along with his previous counsel. Obviously, that kind of lays the groundwork that we may be dealing with difficult personalities, conflicting issues. It just kind of tanks the well a little bit. There's nothing relevant about that. We didn't need to explain to the court why Mr. Lukofsky had been appointed to represent him. Clearly, the court's familiar with him. He testified that he was appointed. That's sufficient. There's no reason to bring in a history of whether Mr. Clark may or may not have ever had problems with other attorneys. What's that got to do with anything? That should not have been admitted, yet the trial court allowed that information. That was objected to. There was indeed. There was also an objection for a lack of foundation on that basis because the only way that Mr. Lukofsky could know that was via hearsay evidence that he would have gotten from prior counsel. And so it would have been inadmissible on that point as well. Thank you, counsel. We'll have an opportunity to reply. Counsel, I have to leave. Thank you, Your Honor. Your Honor, thank you. My name is Walt Lukofsky. I am the appellee in this matter and representing myself before this court. What you're being asked today is not particularly complicated. The trial court found that two or more acts of… You stopped me first, counsel. Yes, sir. same one I asked counsel. How is this case not moved? I believe for the same reason that counsel stated, that I have asked the trial court to extend the order and the trial court has extended the order. I believe the next date on that is October 3rd, but I would have to confirm to make sure that's accurate, but it's within that time frame, sometime in early October. The appellate court should only reverse the trial court's finding of fact, which should be by a preponderance of the evidence, if it finds the trial court's finding is against the manifest way of the evidence. A finding is against the manifest way of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. For Judge Bennett of the trial court to have found that two or more, or to have found that the order should be entered, he only had to find two or more acts of stalking or harassment. One is conceded by the appellant. The second could have been any one of a number of things, most particularly the Kleenex incident at Walmart. I think the trial court could easily find that if someone comes up behind a person and puts a box of Kleenexes in their groceries and says, this is for your sniveling, that that is an act of harassment and could cause emotional distress. It certainly was intended to do so. This idea that it was some ironic comment is, if I may, absurd. The background information is relevant to how the victim of the stalking would perceive it. If this was a person who had come into his office, cursed at him, yelled at him, shown bad blood before, I think that shows that putting the Kleenex box in the groceries is an act of intimidation, an act of harassment, not merely some ironic statement about whatever that would be. Following up, after I ignored his action at the Walmart, he followed up, not to be ignored, and tied it to my secretary's car. Afterwards, my secretary called me, told me that, and I said, well, okay. Thereafter, she apparently went to his house. I did not know that was going to happen. I did not know it did happen until the next day, contrary to the inference made by the appellant's argument. Whether that was right or wrong, I have no idea. No court has been asked to decide that, but it was not something I had anything to do with. These acts continued. Clark continued to intimidate through looks in the office. He yelled about the evidence. There were two incidents that were mentioned by counsel for the appellant. One was the Kleenex incident. My recollection of the evidence was that he did not deny that. Is that correct? I believe that's correct. The other one I was thinking of was the incident of some incident of raising the voice across the street. What was his version of that event, do you recall? I don't recall him ever giving a version of that event. Did he testify about that? Not that I recall. Thank you. That incident was the next one I was to bring up. Taken in any reasonable context, a person who had done all these things yelling across the street, even though I was unable to determine what was said, I could tell it wasn't nice. I could tell it wasn't complimentary. I think anybody in my position could have. Then when the phone rang, I saw a caller ID as his name. I heard his voice. I knew it was him, and I hung up. Did you testify as to the name? I don't think so, but I don't recall. That's not in evidence. There's a name that matches. I don't believe I was ever asked that question, so I don't think so, Your Honor. Counsel makes a point that I never went to the police. To me, going to the police is a big deal, a bigger deal than filing a stalking order. I suppose that in some way I had some residual loyalty to Mr. Clark, having represented him as his attorney, and I did not go to the police until the undersheriff of Shelby County was in court during testimony on, I believe, the petition filed by Mr. Clark, and he advised me that he would like more information about the incident and asked me and my secretary to both provide information and a report to him. He did that on his own. He made that request. We did comply. He forwarded that. He prepared a report forwarded to the state's attorney on his own, and the state's attorney filed the stalking charge. Frankly, it was on file before I even knew it was happening. Is this all a record? It is a record. I believe the dates of what's happened are on file. It was, I think, in the petition that the undersheriff had asked me to prepare the report. I know that the charge was filed as in the petition. I bring that up to answer the allegation that somehow this was done out of revenge or conspiracy. There is ample, ample evidence in the record, no matter how your honors look at it, that there were two or more instances of harassment by Mr. Clark against me. I think the Kleenex incident, the yelling across the street incident, are the two most obvious. There are others you could consider. As far as the arguments with regard to rulings on technical evidence, I don't think the trial court was incorrect. I think the trial court made correct rulings. When objections were made, I think that the arguments are waived and not plain error. The incident's objections were not made, but however the court rules on those issues, I think the outcome would still be the same. The evidence was not closely matched. It was, I think, very obvious to Judge Bennett that two or more incidents occurred, and he made the correct ruling. Thank you. Thank you, counsel. Ms. Bly? One point I want to make is that I just now reviewed Mr. Lukofsky's testimony at the hearing regarding the Walmart incident. He never said there that it came up behind him either. So again, he has presented more evidence today, different and not included prior. I would ask you not to consider that either. I will only consider what's in the record. Thank you, Your Honor. He very specifically says, actually, that he didn't say anything to him at all, that Mr. Clark didn't say anything to him at all. He alleged in his petition that he said, this is for your sniveling, but at the hearing, he actually said, he didn't say anything to me at all, and he didn't say that it came up behind him. Mr. Lukofsky had seen him in the store shopping, but he just approached him at the checkout. That's all he said about that. I do want to make one point that maybe wasn't clear. The trial court took this matter under advisement, so the suggestion that it was so obvious to the court that there should be no problem in affirming the decision, I think, is belied by the fact that the court took the matter under advisement for some time. It wasn't that obvious to him. He had to go think about it. And when he filed the order, entering the plenary order, he did not specify which acts that he relied on at all. So we don't know. We don't know which ones he found actually happened, which ones he thought were frivolous. We don't have a clue. And there are things in the Appleby's brief that suggest that the trial court made a specific finding that it simply didn't make, and I'd like to draw the court's attention to that. And my very last point is that, you know, as I've said, I certainly understand Mr. Lukofsky's position and his discomfort and dislike of this situation. He just told you that when Mr. Clark spoke to him across the street, he took it poorly because he knows Mr. Clark doesn't like it and he's not nice. I would suggest that these orders don't exist to make people be nice and to make people like you. It must be a much more significant step to justify the entry of an order that has criminal effects if something goes wrong. These are important things. They shouldn't just be used because you can. There needs to be a legitimate basis for it, and it's important that this court not just rubber stamp what the trial court did. It's important to look very closely at the evidence and see that it just does not measure up. And when you do that, I'm confident that if you actually read what the evidence was as opposed to what is included in a brief or argued here, if you read the testimony, you're going to agree with me that this was not proven by a preponderance of the evidence, and we would ask that you abdicate the order. Thank you. Thank you.